# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VINCENT MILES, #N41303, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 18−cv−254−NJR ) ) |
| ROBERT C. MUELLER, DR. SANTOS, RN BREWER, LISA KREBS, COUNSELOR WALKER, DEBORAH S. ZELASKO, SHERRY BENTON, and JOHN R. BALDWIN, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Vincent Miles, an inmate in Centralia Correctional Center ("Centralia"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1). pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> 	(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

### **The Complaint**

In his Complaint, Plaintiff makes the following allegations: on April 20, 2016, Plaintiff was transferred to Centralia. (Doc. 1, p. 6). During his incarceration prior to being transferred to Centralia, it was discovered that Plaintiff suffers from degenerative arthritis, which caused him to have a total hip replacement in 2006. *Id.* This left him with "a number of arthritic pains bilaterally growing throughout [his] body which warrant constant treatment for pain." *Id.* Due to this condition, Plaintiff was prescribed Maloxecom (presumably Meloxicam), Indocin 50mg, Ibuprofen 200-600mg, Utrum 50mg (presumably Ultram), Neproxen 200-500mg (presumably Naproxen), and Motrin 200-800mg while incarcerated at other institutions. *Id.* Plaintiff was also on General Medicine Clinic, where he "would regularly be seen by a doctor and regularly prescribed medications for pain without co-pay due to [his] medical condition being chronic." *Id.*

After arriving at Centralia, Plaintiff saw Dr. Santos for renewal of his medical permits relating to his medical condition, including low bunk, low gallery, and cane permits. *Id.* During this meeting, Plaintiff asked Dr. Santos about prescribing him pain medication. *Id.* Dr. Santos told Plaintiff he would have to "pay for that." *Id.* Dr. Santos then issued the medical permits mentioned above, but he did not issue Plaintiff a prescription for pain medication. *Id.*

On April 23, 2016, Plaintiff wrote a letter to the Health Care Administrator, Lisa Krebs, informing her of his General Medicine Clinic status and requesting to once again be granted that status. (Doc. 1, p. 7). He included with the letter a medical memorandum dated January 11, 2015 from the Health Care Administrator at Pinckneyville, which acknowledges that Plaintiff was placed on "general med clinic for arthritis in January 2015." *Id.*; (Doc. 1-1, p. 8). After receiving no response to his initial letter, Plaintiff wrote a second letter requesting to be placed on General Medicine Clinic. (Doc. 1, p. 7). He did not receive an immediate response. *Id.*

After submitting a sick call request, Plaintiff was called to the Health Care Unit ("HCU") on May 13, 2016, where he saw Certified Medical Technician Brewer. *Id.* Brewer told Plaintiff that she had to prescribe him basic pain medication pursuant to protocol, despite his previous prescriptions for pain medication. *Id.* Plaintiff was charged a $5 co-pay and given 200mg Ibuprofen. *Id.* He tried to explain to Brewer that the prescribed medication would be ineffective in treating his level of pain, and he attempted to show her documents including radiology reports and clinical progress notes to prove it to her. *Id.* She refused to review any of Plaintiff's medical documents. *Id.*

On May 17, 2016, Plaintiff returned to the HCU with the same complaint of pain. *Id.* He was required to pay a second $5 co-pay. *Id.* He informed the medical staff that 200mg Ibuprofen was inadequate to treat his pain and that he was prescribed stronger medications previously. *Id.*

3

He was then scheduled to see Dr. Santos. *Id.* Two days later, Plaintiff saw Dr. Santos and attempted to show him medical documents verifying his previous diagnosis and prescriptions for pain. *Id.* Dr. Santos did not review the documents, but he changed Plaintiff's prescription to 375mg Naproxen, which is "another medication that is wholly inadequate to treat [Plaintiff's] pain." (Doc. 1, pp. 7-8). When Plaintiff asked Dr. Santos to be on General Medicine Clinic so that he would not have to pay the $5 co-pay, Dr. Santos responded that there was no General Medicine Clinic. (Doc. 1, p. 8).

On May 23, 2016, Plaintiff wrote another letter to Lisa Krebs asking to be placed on General Medicine Clinic due to his medical condition and to be exempted from the $5 co-pay. *Id.* Krebs responded in a memorandum dated May 24, 2016, stating that the decision whether to place Plaintiff on General Medicine Clinic was that of Dr. Santos. *Id.* On May 27, 2016, Plaintiff filed an institutional grievance regarding this matter, from which he received no relief. *Id.* On June 8, 2016, Plaintiff sent Dr. Santos a letter because he had previously refused to acknowledge that there was a General Medicine Clinic for Plaintiff's arthritic condition, and he did not accept Plaintiff's suggestions for what pain medication would be ineffective for treating his pain. *Id.* Plaintiff did not receive a response from Dr. Santos. *Id.*

On June 18, 2016, Plaintiff visited the HCU with the same complaint of pain. *Id.* He was required to pay the $5 co-pay and was scheduled to see Dr. Santos. *Id.* On June 21, 2016, Plaintiff saw Dr. Santos and told him that the 375mg Naproxen was inadequate and, that based on previous prescriptions, 500mg Naproxen also would be ineffective. *Id.* Despite this information, Dr. Santos prescribed 500mg Naproxen. *Id.*

On July 19, 2016, Plaintiff paid another $5 co-pay for the same complaint of arthritic pain and inadequate pain medication. *Id.* He saw Dr. Santos on July 21, 2016, and complained to

him of pain in his hips, wrists, shoulders, and elbows. *Id.* Plaintiff also requested an x-ray. *Id.* Dr. Santos suggested 600mg Ibuprofen, but Plaintiff told him that it would be ineffective based on his previous prescriptions. (Doc. 1, pp. 8-9). Despite this information, Dr. Santos prescribed 600mg Ibuprofen. (Doc. 1, p. 9).

On July 31, Plaintiff visited the HCU again for the same issues. *Id.* He was charged a $5 co-pay. *Id.* On August 2, 2016, Plaintiff met with Dr. Santos and told him that 7.5 mg Meloxicam would also be ineffective for treating his level of pain based on previous prescriptions. *Id.* Despite this, Dr. Santos prescribed Plaintiff 7.5mg Meloxicam. *Id.*

On August 23, Plaintiff returned to the HCU complaining of the same issues. *Id.* He was charged another $5 co-pay and scheduled to see Dr. Santos again. *Id.* He met with Dr. Santos August 26, 2016, and he explained the Meloxicam did not work for his level of pain. *Id.* He also tried to show Dr. Santos medical documents where he had previously been prescribed Meloxicam by another doctor. *Id.* Plaintiff requested to be placed on the General Medicine Clinic so he would not have to continue to pay the $5 co-pay. *Id.* Dr. Santos refused to place Plaintiff on the General Medicine Clinic and increased his dosage from 7.5mg to 15mg, the same dosage that the previous doctor tried. *Id.*

Plaintiff again complained to Lisa Krebs about his treatment, but he received a memorandum on September 8, 2016, which explained that Dr. Santos makes medical decisions, including regarding the treatments and medications Plaintiff receives. *Id.* The next day, Plaintiff wrote to Dr. Santos explaining his need for stronger pain medication and placement on the General Medicine Clinic. *Id.* He received no response. *Id.*

On September 24, 2016, Plaintiff paid another $5 co-pay at the HCU where he complained of the same issues. (Doc. 1, p. 10). On September 27, 2016, Plaintiff saw Dr. Santos

again and requested adequate pain medication and to be placed on General Medicine Clinic. *Id.* Plaintiff stressed to Dr. Santos that the 15mg Meloxicam was ineffective. *Id.* Dr. Santos then prescribed 15mg Meloxicam for the next two months. *Id.*

On October 25, 2016, Plaintiff paid another $5 co-pay to be seen at the HCU and complained of the same issues. *Id.* He saw Dr. Garcia on October 29, 2016, and he spoke to him about his history with arthritis and pain. *Id.* He also told Dr. Garcia about how pain affected his depression and blood pressure, and how he was frustrated with the inadequate pain medications that had been prescribed by Dr. Santos. *Id.* Dr. Garcia then suggested Plaintiff try a combination of 600mg Ibuprofen, 750mg Roboxin (presumably Robaxin), and a tube of analgesic balm for topical application to painful areas. *Id.* Though this was not completely effective, it worked better in treating Plaintiff's arthritic pain, "reducing [his] pain level from about a 7 to a 5 on good days." *Id.*

"After a bad day where [Plaintiff's] pain level spiked to a 9 or 10," Plaintiff returned to the HCU, paid another $5 co-pay, and met with Dr. Garcia, who renewed his prescription. *Id.* On December 24, 2016, Plaintiff paid another $5 co-pay for the same issues and was scheduled to see Dr. Santos on December 27, 2016. *Id.* At the appointment, Plaintiff told Dr. Santos that Dr. Garcia's suggested prescriptions had been more effective for treating his pain. *Id.* Plaintiff asked Dr. Santos to renew the prescriptions for this reason, but Dr. Santos refused to prescribe the analgesic balm along with the Ibuprofen and Robaxin. (Doc. 1, p. 11).

On January 22, 2017, Plaintiff paid another $5 co-pay at the HCU for the same issues and was scheduled to see Dr. Santos on January 24, 2017. *Id.* He informed Dr. Santos that the Robaxin and Ibuprofen were not as effective in treating his pain without the analgesic balm. *Id.* In response, Dr. Santos refused to prescribe the analgesic balm and cut Plaintiff's Robaxin

prescription from 30 to 10 days. *Id.* "Dr. Santos continues to prescribe [Plaintiff] pain medication as such to date." *Id.* Plaintiff has informed Dr. Santos the most effective pain medication he has received was 50mg Ultram, but Dr. Santos refuses to prescribe it to Plaintiff, and he refuses to place Plaintiff on General Medicine Clinic. *Id.*

Plaintiff also claims that Counselor Walker and Deborah Zelasko "refused to recommend that Plaintiff be provided proper pain medication and placed on General Medicine Clinic," and that "Warden Robert C. Mueller concurred with this decision." (Doc. 1, p. 12). Plaintiff further alleges that Sherry Benton denied him relief from his complaint of inadequate pain medication and need to be placed on General Medicine Clinic, and John R. Baldwin concurred. *Id.*

Plaintiff requests monetary and injunctive relief.[1] (Doc. 1, p. 13).

## Discussion

Based on the allegations and claim articulated in the Complaint, the Court finds it convenient to designate a single count in this *pro se* action. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion regarding its merit.

**Count 1 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs involving degenerative arthritis and pain associated therewith in violation of the Eighth Amendment.

As discussed in more detail below, this claim will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

---

[1] Notably, Plaintiff did not file a separate motion seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, and he does not specifically mention a desire for a preliminary, rather than permanent, injunction. Should an urgent need arise, Plaintiff may request a preliminary injunction by filing a separate motion pursuant to Rule 65. Until he does so, his request will be construed as a request for permanent, not preliminary, injunctive relief.

As to Count 1, the Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The unrelenting pain stemming from Plaintiff's diagnosed degenerative arthritis described in the Complaint satisfies the objective component of Count 1 for screening purposes. But the analysis does not end there.

The Complaint also must satisfy the subjective component of these claims. To do so, the Complaint must suggest that the defendants exhibited deliberate indifference to Plaintiff's serious medical needs. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

This standard is satisfied with respect to Dr. Santos, Krebs, and Brewer. According to the Complaint, Dr. Santos persisted in a course of treatment that was not effective for treating Plaintiff's pain, despite being informed by Plaintiff what would and would not work based on his

past treatment. Also, despite being informed that the course of treatment chosen by Dr. Santos was ineffective, Krebs appears to have simply deferred to Dr. Santos's decisions without further inquiry. *See Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) ("While nurses may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care."). Similarly, Brewer allegedly prescribed Plaintiff basic pain medication despite Plaintiff having informed her that it would be insufficient to treat his pain, instead of seeing to it that Plaintiff received the care he needed from someone capable of prescribing the appropriate medication.

The subjective standard is not satisfied with the remaining defendants. Each appears to have received grievances or letters from Plaintiff regarding his medical issues. None of these individuals appears, however, to have been personally involved in Plaintiff's medical treatment, and "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Furthermore, in the case of those defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to Section 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). These defendants' responses to Plaintiff's letters and grievances, or concurrences to them, demonstrate that they inquired into Plaintiff's treatment and confirmed that Plaintiff was being seen and treated for his pain at the direction of the medical providers at Centralia. *See* (Doc. 1-1, pp. 13, 15-16). It is clear they did not blindly turn from Plaintiff's alleged plight without inquiring into it and satisfying themselves that he was under the care of a medical professional.

Plaintiff has therefore failed to show that Zelasko, Benton, Baldwin, Walker, and Mueller

knew of and disregarded a substantial risk to his health, so they will be dismissed from this action without prejudice. For the reasons stated above, Count 1 will proceed against Dr. Santos, Krebs, and Brewer.[2]

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which will be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendants as ordered below. Plaintiff is advised that, because he is proceeding *in forma pauperis*, it is not necessary to file a motion requesting service of process by the United States Marshals Service or other process server. The Clerk will issue summons, and the Court will direct service once the complaint passes preliminary review.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** will **PROCEED** against **SANTOS**, **KREBS**, and **BREWER**.

**IT IS FURTHER ORDERED** that **COUNT 1** is **DISMISSED without prejudice** as against **MUELLER**, **WALKER**, **ZELASKO**, **BENTON**, and **BALDWIN**, and these individuals are **DISMISSED without prejudice** from this action for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **SANTOS**,

---

[2] The Court notes that, while Plaintiff takes issue with the co-pays he was charged during the relevant time, an inmate's constitutional rights are not violated by the collection of a fee for prison medical services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, not cognizable in a Section 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution").

**KREBS**, and **BREWER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 7, 2018**

                                                                                                  _____
                                                                                                  **NANCY J. ROSENSTENGEL**
                                                                                                  **United States District Judge**